All rise. The Delaware County Court Third Division is now in session. The Honorable Justice Leroy King-Martin is presenting. Good morning, ladies and gentlemen. Please be seated. I'm a clerk. People v. Robinson. The lawyers who are going to argue, would you please stand and introduce yourselves? Thank you, sir. This is the Delaware County Court of Appeals. Very good. Now, as is our custom, our habit, we usually allow 15 minutes per side. Of course, we make some allowances in the event that there are questions from the justices. As much as you are the movement here, are you seeking to reserve some time for rebuttal? Five minutes, sir. Very good. Please be seated. And with that, then, you may begin. Thank you, Your Honor. Good morning, Your Honors. My name is Gilbert Lenz. I'm from the Office of the State Appellate Defender on behalf of Elliot Robinson. There are three claims before the Court. The first is the appeal from the third stage dismissal of Robinson's claim of ineffective assistance of direct appeal counsel. The relief on that request would be a new trial. Alternatively, Mr. Robinson requests that if his court does not grant a new trial, it remand on one or both of his remaining claims appeals from the second stage dismissal of his actual instance claim and his proportionate penalties claim. Turning to the first argument, Mr. Robinson met his burden at the third stage to show that his direct appeal counsel was ineffective for not raising a claim that the state committed plain error when it elicited irrelevant, overly prejudicial, other crimes evidence from Arnie Kent at this trial. I have a question, counsel. So I understand counsel didn't raise that one particular issue, but he did consult with his supervisors. He talked to other colleagues in the office, and then based on the determination in terms of developing strategy, it was decided that that issue shouldn't be raised. So, I mean, he did investigation. He did due diligence in terms of deciding in terms of strategy, what's the best strategy, and he took the strategy that he thought was best at the time. Well, it was she, Your Honor. She did follow the State Appellate Defender Procedure. The question, though, in any claim of ineffectiveness of appeal counsel, appellate counsel, is whether the claim would have had merit, whether there's a reasonable probability that the claim would have prevailed had it been raised. So regardless of what counsel did in deciding what claims to raise, if this Court finds that a claim that she failed to raise had merit and had a reasonable probability of success, that's ineffectiveness of appellate counsel, regardless of how much work counsel put into the case. I think we should agree that that's what we should take into consideration. I mean, this wasn't a decision that was made lightly. It was one that was well thought out, discussed among her colleagues and her supervisors. No, Your Honor. In the context specifically of ineffectiveness of appellate counsel, all of that is irrelevant. The only question before the Court is whether the claim at issue had a reasonable probability of success. Because if it did, counsel was ineffective for not raising it, regardless of anything else that happened. And that claim would have had a reasonable probability of success had it been raised on direct appeal, because the evidence in this case was closely balanced. There was no physical evidence tying Mr. Robinson to the scene. There was no confession. The State's primary evidence consisted of two out-of-court statements, one by the paramedic and one by Detective Stover. Detective Stover's testimony in particular was contested. And the State's other primary piece of evidence was the other crime's evidence, about the previous incident months earlier with Arnie Kent. It's very important. So Kent's initial identification of Mr. Robinson occurred more than eight months, I believe, after the incident. And his initial identification in the array was tentative. It was only another six months after that, after he had seen the array, that he made a more positive identification of Mr. Robinson, more than a year after his incident. Do you not think it significant that Mr. Robinson put himself there at the time of the shooting? Are you referring to Detective Stover's testimony? Correct. Yes. Detective Stover's testimony, the question about whether Stover was credible was a question for the jury. His credibility was squarely before the jury on whether Mr. Robinson actually made that statement, because there was a lengthy interview that Stover made with Robinson on camera, lengthy recorded interview where Robinson denied being the shooter, denied being present at the scene. It was only as they were walking back to his cell that Stover claims that Robinson made this unrecorded statement, saying that he was present at the scene, although still denying that he was the shooter. Stover immediately took Mr. Robinson back to the interview room, started recording again, and at no point in that recorded statement did Robinson say he was at the scene or was the shooter. So, you know, Detective Stover offered that testimony, but that doesn't mean, that doesn't prove, that's not overwhelming evidence that Robinson was at the scene. That's a question of credibility of Detective Stover for this jury. Wasn't there another identification putting him at the scene, Collins' dying decoration? I mean, shouldn't we take that into consideration? That was evidence the State had that Elliot from 71st, without a last name, was the shooter. Certainly, that was a part of the State's evidence of guilt. But that is not overwhelming evidence, even in combination with the other evidence the State had, because it was an out-of-court statement and against the State. But that's a dying declaration. It was admissible. Yeah. It was admissible, but it's not overwhelming evidence. The State was relying here not on eyewitness testimony, not on physical evidence, not on a confession. It was out-of-court statements, plus Arnie Kent's initially tentative identification of Mr. Robinson at an incident months earlier. So the State said... What about the cartridges, the casing? Mm-hmm. Saying they made a determination it was the same weapon, right? Yes. From the previous incident and then... Months earlier, yes. The cartridges found that the two scenes were fired from the same weapon about four months apart, I believe. Again, evidence the State... It was admissible. The State could present it. The question of whether it was... All of these things combined were so overwhelming that the errors that did occur, and it's undisputed that the errors occurred here regarding Kent's testimony, eliciting the irrelevant, overly prejudicial details that the State promised not to elicit. It's undisputed that was error. So the only question is whether the evidence that Your Honors are describing was so overwhelming that that error was not prejudicial. And this was not a case where that was overwhelming evidence. Well, Sabu tells us that when you're looking at closely balanced evidence that, you know, you have to look at if there's other extrinsic evidence. So you're saying that the casing and the diamond decoration are not sufficient extrinsic evidence? They're admissible evidence. They're on the State's side of the ledger, but they don't render the evidence overwhelming because the State's primary evidence was the Kent's identification. I mean, the casings would link Robinson to the two offenses if we're 100 percent certain that he was the person at the original incident, but Kent's identification of him was tentative eight months later and then only certain after seeing the array and after seeing the lineup six months after that. So the important thing about Sebi is that what Sebi makes clear and what this Court did not have the benefit of in 2013 was that when a jury's verdict depends on credibility assessments and when the jury hears different versions of events from each party, as it did in this case, and neither version of events is implausible or, as the Supreme Court said, fanciful. The Supreme Court used the word fanciful. If neither version is fanciful, that's a closely balanced case, and that's where first-pronged plain error applies. That's what happened here. The jury had a credibility determination to make on the State's side, multiple, with Kent, Stover, and the out-of-court statement in the ambulance to some extent. We're not saying the paramedic was to some. It's just that, you know, out-of-court statements are less reliable than in-court testimony. And then on the defense side, Odin testified that he saw Big Mike with the gun immediately prior to the shooting and did not see Robinson at the scene. So Odin's version of events was not implausible. It was not objectively refuted. It was a matter of his credibility. So now we have a credibility assessment on both sides. Neither version of events is implausible. That's closely balanced under SEBI, and that's why this Court should remand for a new trial under Argument 1. So no further questions on Argument 1. Just briefly on the other two arguments, Your Honor, alternatively, if this Court does not remand for a new trial, it should remand for a third-stage hearing on Robinson's remaining claims. First, as to actual innocence, he's made a substantial showing of every element of actual innocence here. It's undisputed that it's newly discovered evidence. It's material, non-accumulative, and while it is disputed, its conclusive nature is disputed, it is sufficiently conclusive to warrant a third-stage hearing, as the appellate court has found routinely in many other cases in similar years, in recent years. And as to the third argument, sentencing claim, Robinson made a substantial showing that his 45-year mandatory minimum sentence was unconstitutional as applied to him because he, again, has met all the elements on the pleadings, that he has a life sentence, he did not get a Miller-compliant sentencing hearing, and he has provided evidence which, if believed, would show that he was more like a juvenile than an adult at 18 years old. And that's the exact kind of claim that our Supreme Court has invited defendants like Robinson to make. The contradictory evidence that we have here, you know, at sentencing, he says, you know, I'm a good kid, I came from a good neighborhood, good family, and, you know, I went to high school, graduated, and he went to college, and then he meets the doctor, and then the doctor says, oh, no, this is, you came from a very bad environment, had a lot of bad influences, et cetera, et cetera. And he makes this determination over just, what, a three-hour interview? Yeah, two or three hour interview, yeah. It was a two or three hour interview, plus Dr. Garbarino reviewed the record, reviewed documents related to Mr. Robinson's case. But he also reviewed the PSI watch, which said that he was an outstanding citizen. When Mr. Robinson described his childhood as normal, I think Dr. Garbarino, in his expert opinion, looked at the facts of Robinson's upbringing and said that that was not normal, in fact. In fact, it was very traumatic. And that was based on his interview with Robinson as well as his expertise on these matters, which I was pointing to is Dr. Garbarino's credibility. Now, Dr. Garbarino has made an assertion in the pleadings that Mr. Robinson was more like a juvenile adult when he was 18 years old, and that's why his sentence is, that's Dr. Garbarino's expert opinion. If this Court finds that that raises credibility questions, any conflicts with the PSI, which Dr. Garbarino explained, by the way, also as part of his expert assessment, any contradictions there, any questions about Dr. Garbarino's credibility can only be resolved at a third-stage hearing. And that's why this Court should demand that claim as well for third-stage proceedings. Is it more than credibility or that the foundation for his opinions is not strong enough to survive the motion to dismiss? It's entirely credibility, Your Honor. He did interview Mr. Robinson for at least two hours. He reviewed the entire record. He made an expert assessment of Mr. Robinson's maturity when he was 18 years old. That's an expert opinion which is subject to credibility determination, but that credibility determination can only be made at the third stage. I don't believe there's any foundation issue here. You mentioned that there was a substantial showing that he was more like a juvenile, one, and two, that he didn't get a Miller-compliant sentencing hearing. Do you also have to make a substantial showing that the sentence shocks the moral sense of the community as well? I believe that is a standard for when a sentence is excessive. I don't believe that shocks the moral sense of the community is one of the elements to make a showing on the pleadings that a mandatory life sentence is unconstitutional as applied to the defendant. The question is whether, you know, the illustrating court has made it clear that someone who was a juvenile or akin to a juvenile at his young adult age who got more than 40 years got a life sentence, and that sentence is unconstitutional if the defendant proves that he was more akin to a juvenile than an adult at his age, in this case, 18. So I'm unaware of the shock. You have to note that case law is kind of all over the board at this point on these types of cases, so I was just wondering what your position was. Well, I would say that the majority of the cases involving – so you're correct. The Supreme Court has limited the availability of this claim to certain defendants, but Mr. Robinson fits within the category of defendants who the Supreme Court, as recently as 2023, has said has a claim under the Post-Conviction Hearing Act. An 18-year-old who got a mandatory life sentence, 45 years under the Supreme Court precedent of mandatory life. He did not have a sentencing hearing originally where his youth and his characteristics were considered, and he has provided evidence, which many defendants aren't able to provide and still get a third-stage hearing. He has provided expert opinion evidence that he was more akin to a juvenile than an adult at 18, and that's why this particular claim fits right within the category that the Supreme Court has said should you get a hearing. What evidence is that, that he was more like a juvenile than an adult at the time of the incident? Well, there's – Let's put the doctor's suppositions here aside. What other evidence do we have in the record that would indicate that he was more of a juvenile than an adult? Well, Dr. Gerber, his opinions were based on the record, and they're based on the fact that Mr. Robinson had a traumatic childhood. But didn't the circuit court judges say that his report or his estimations or assessments, whatever you might want to call them, contradicted the record? Certainly the circuit court made that finding. A contradiction with the record on the pleadings of the second stage is not a basis for dismissal. No, no, but I'm just saying, though, that the circuit court did look at both the doctor's report and at the record and made it an assessment on the record that, you know, his report contradicted what was in the record. Well, the contradiction the circuit court found was within the PSI. And the reason I'm asking is because I haven't looked at the record, so. Well, yes, the contradiction the circuit court found was between Dr. Gerberino's opinion and the PSI or Robinson's statements in 2020 versus his statements at the PSI 10 years earlier. And Dr. Gerberino didn't just note those contradictions. He was fully aware of those contradictions, and he made his expert assessment of those contradictions, and he explained in his opinion why an 18-year-old or Robinson's 23 by the time of his PSI, why a young adult would think his childhood was normal based on his upbringing, his limited world, all of that. And, you know, in fact, it was not normal. In fact, as Dr. Gerberino says, he had one of the most traumatic childhoods that anyone could have based on facts from the record. So, again, Dr. Gerberino's credibility is in question, and that's exactly why it has to go to a third stage hearing, because that's the only place where this credibility assessment can occur. Thank you. Can you tell me about the second issue about the affidavits and why the trial court made an error there? Well, Sam will review it. First of all, Your Honor, so what the trial court said is not pertinent, but the affidavits meet, satisfy every element of a claim of actual innocence on the pleadings. Daniels and Dudley, it's undisputed that they're newly discovered witnesses and that their testimony, that their affidavits provide material, non-cumulative evidence. The only question is whether they're sufficiently conclusive, and as this court has routinely held, when a newly discovered witness identifies someone else that they're familiar with as the offender and says the defendant was not at the scene, that is sufficiently conclusive because the standard is would a jury who heard that evidence and believed it, could that jury reasonably convict the defendant? And the answer is no, and that's why anything about Daniels and Dudley's credibility cannot be resolved here. It has to be resolved at the third stage hearing. And did you say your first argument is being brought under first prong plain error? Yes. Yeah, so the question is whether evidence is closely balanced, and for the reasons I explained earlier, it was. Thank you, Your Honor. Thank you. Thank you. Assistant State's Attorney Amy McGowan for the People. May it please the Court. Does Circuit Court properly dispose of defendant's post-conviction petition at the appropriate stages? I, too, would like to start with the third-stage denial of defendant's ineffective assistance of appellate counsel claim, but before I get to the merits, there are two preliminary matters. First, I ask this Court to reject defendant's request for de novo review. It is well established that third-stage evidentiary hearings are reviewed for abuse of discretion. While de novo review may be appropriate in cases where the matter is decided on the record, on transcripts, affidavits alone, de novo review could be appropriate then. But that's not the case here. This Court, the lower Court here, heard live testimony. It watched, observed, and listened to appellate counsel explain her reasoning in choosing the claims that she ultimately proceeded on, and that was relevant to the Court's decision on whether or not she provided reasonable, she performed reasonably. Don't we have a bifurcated standard here? Because we are dealing with facts, but we're also dealing with the question of law. Sure, you're dealing with the question of law, but the Court's finding that she provided the first prong of Strickland, that there's reasonable performance, that should be reviewed for abuse of discretion at a third-stage evidentiary hearing where the Court heard and considered this live testimony. And this brings me to my second preliminary matter, that this Court should request defendants' request to eliminate the first prong of Strickland. It is well established that there are two prongs to every ineffective assistance of counsel claim, whether it's the trial level or appellate level. A defendant has to show, in this case a third stage, by the ponderance of the evidence that his appellate counsel performed efficiently and that the deficient performance caused him prejudice. Turning to the merits of the claim, defendants did not establish by the ponderance of the evidence that his appellate counsel provided an effective assistance. Regarding deficient performance, again, this is all with high deference, comes with a strong presumption that she performed reasonably. And again, just to point out, and it's well established, that appellate counsel is not obligated to raise every conceivable issue, but they're required to exercise some professional judgment in choosing these claims. And she explained how she did it. Your opponent seems to have a difference of opinion in that regard, because in this case, as we asked her to do, she didn't just summarily decide, I'm not going to raise this issue, but she consulted with supervisors, consulted with colleagues, and the counsel says that's irrelevant and we shouldn't consider it. It's not irrelevant. It's the first prong of Strickland. It's well established law that there's two strongs of Strickland. You have to show deficient performance and you have to show prejudice. You have to show both prongs. You can't say just because prejudice is shown, they're automatically deficient. That's not how it works. You have to make showings of both. It is well established. There's no case that says that one prong doesn't apply in appellate counsel cases. And appellate counsel explained how she reached this decision, how she chose to raise the claims that she did. She did not perform proficiently. And it's important to look at what the claim is that defendant expects her to have raised. So briefly summarizing the facts, the other crimes evidenced, the state was allowed to get in the prior armed robbery through the victim, and no further details. So the victim testified that defendant pointed a gun and demanded his money, committed an armed robbery. That was allowed. Now the victim went on to say that the defendant made them take their clothes off and made a statement that he called himself Ramon and some other expletives. Those are the two statements really at issue here. Now defendant's brief, he says that it's a claim of court error. Today he came up here and said the state committed plain error, but that's not the claim in his brief. It's not a prosecutorial misconduct claim. He says the court committed error. And what about the issue that the ASA may have gone over the court's limited instruction in terms of the identification evidence to account? Sure, well, so those two statements came in. And arguably those were details in excess of what the court had permitted. But what was appellate counsel to do? How was appellate counsel supposed to raise this claim when trial counsel didn't object? And trial counsel's performance is not challenged, by the way. So trial counsel does not object when this evidence comes in. Trial counsel elicited the state-exact information from his own witness in his case in chief that the defendant made them strip off their clothes. Defendant used the statement that defendant calls himself a mall in his closing argument to prove that it wasn't defendant. So if trial counsel is not objecting and then using this information himself, what is appellate counsel supposed to do? What is the claim? Defendant claims here on his briefs that the court erred. What would that look like? Was the court supposed to interrupt the witness and do a sponte, cease questioning? So appellate counsel, she sees that it's possibly an error, right? Arguably these two statements shouldn't have come in. But what was she supposed to do with it? She talks to her supervisor. This isn't going to succeed. They agree. It's not a viable claim. They choose to raise five other claims instead of this one. That was a reasonable decision. Now getting to the prejudice, again, as I stated, it did not prejudice defendant because defendant tried to use this information himself. Arguably it was helpful to defendant that the offender in the first case called himself Ramon. That's what he said in his closing. It wasn't the mass offender was Ramon. It wasn't the defendant. It wasn't Elliot Robinson. It was Ramon. And with the overwhelming evidence, but not closely balanced in this case, arguing that the jurors improperly heard those two statements would not have made a difference. It would not have caused this court to remand for a new trial. I believe the record supports that this court would not even have considered that claim because the court refused to consider defendant's other two unpreserved issues because it found the evidence not closely balanced. Now I want to look at the appropriate standard here. I would think defendant is arguing regarding this isn't appropriate. You can't look at SEBI or what this court might do or ask this court to re-weigh this evidence. There's not an insufficient evidence claim in front of you. There's not a plain error should this evidence, those two statements have come in in front of you. This is an ineffective assistance of appellate counsel claim. That means you're deciding what the 2013 appellate court would have done before SEBI. Not with the benefit of hindsight wondering how SEBI would have affected their decision. It wouldn't have because it happened in 2013. It's not appropriate to argue now that the evidence wasn't closely balanced because of Arnie Kim's identification was sufficient. When you're showing that the court would have reached a different result, you're stuck with that court's findings and that court found that the evidence was not closely balanced and chose to not even consider other unpreserved claims. And it cannot be said that these two statements in light of the not closely balanced evidence would have caused the 2013 court to remand for a new trial. Counsel is arguing that SEBI in some regards is appropriate because we had the case scenes, we had the dime declaration, and so we shouldn't consider that as extrinsic facts or evidence. As SEBI says, if it's closely balanced, you have to look, is there extrinsic evidence here? And counsel is arguing that there's not. If there was a first-prong plain error argument in front of you right now requiring you, this court, to determine if the evidence was closely balanced, SEBI would be appropriate. This is an ineffective assistance of appellate counsel claim and defendant is showing prejudice. Defendant has to show that the 2013 court would have reached a different result if appellate counsel reads that claim. And he cannot do that based on SEBI. No. For those reasons, because defendant failed to satisfy either strict or prong, the court properly denied third-stage relief and I ask that you affirm that decision. Moving to the claims that were dismissed at second stage. Defendant failed to make a substantial showing of actual innocence. What is disputed here is whether these two affidavits are of such a conclusive character that they would probably change the result on retrial. And defendant presents the affidavits of Daniels and Dudley, who both claim that they were on porches in the area and saw Big Mike beat up and shoot the victim in this case, Collins. Now, this evidence isn't considered in a vacuum, but it's considered along with all the evidence that was presented at trial. And we have Collins saying that defendant shot him, a dying declaration. What is more inherently reliable than this dying declaration? Who did this to you? He says, Elliot from 71st and Champlain. We know that defendant was the only Elliot from 71st and Champlain. Now, there was another Elliot, as defendant below argued, who was born in 1912, lived on Champlain a little further down. Presumably, it was this Elliot from 71st and Champlain. Defendant admitted to knowing Collins. Defense witness Odoms corroborates that he met Collins through defendant. The paramedics responded and treated Collins on 71st and Champlain at 3.57 p.m. Twenty minutes later, defendant arrived at his girlfriend's with nasty cuts on his hand. Collins was severely beaten. The firearm used to kill Collins was the same that was used to shoot at Kent during the armed robbery. Now, this is strong trial evidence. And while this court is to presume that a jury hearing this would believe these witnesses, there has to be some bounds of reasonableness. For example, Daniel stated that she was on the back porch at 7135 Champlain when the fight happened. We know from the paramedics and from the police officers who responded that the crime happened at 7131 Champlain, not the same house that she said she was at. Now, a jury could believe her, but does that require them also believing that all the paramedics who responded were wrong, that the police were wrong? Does it require disbelieving everything else? No, the jury is going to have to reconcile some evidence. So when Daniels and Dudley state the defendant wasn't there, but defendant stated that he was there, there's going to be some reconciliation they have to do with that as well. Perhaps Daniels and Dudley, believable, didn't see defendant, but perhaps he was there. This was a big, you know, as they describe, a big melee where Collins essentially jumped and then shot. So their evidence. I'm sorry. Can I ask you a question? What about police officer Crowder who said that he knew everybody in the neighborhood and in that group he only recognized Odom, but then we have Odom saying that the defendant wasn't present at the shooting? I mean, what about that evidence? Isn't that sufficient to say that maybe there is an actual instance claim here? Well, there is evidence presented. Odom said the defendant wasn't there. And Crowder, I don't think he said the defendant wasn't there. It was a group of people, and he had only recognized two. So just Crowder not recognizing or not seeing defendant. I mean, we have them coming. We have them running, some through the alley, some through the front yards, down a gangway. It's very possible that Crowder, like he said, didn't see defendant. Doesn't mean defendant wasn't there. But what about Odom saying that the defendant wasn't present? Sure, and yes, and the jury heard that, and that is something that they would have to reconcile too with all of the strong evidence of guilt and these affidavits. It would have to be considered all together. And in closing, I want to just make clear that what the court is deciding here is whether the evidence reasonably, probably more likely than not, would cause a jury to change its decision. It's not simply could it. And I know the defendant made that argument, and he cites in his brief. But if you read Robinson, which also was only at the leafed file stage, where it even said that this burden was higher at second stage, Robinson, over and over, reasonably, probably more likely than not, and that was at the leafed file stage. So given the burden of the conclusive character, given the strong evidence of trial, I would ask that you affirm the lower-course dismissal of the actual innocence claim. And finally, moving on to defendant's last claim. So are you not arguing that the affidavits are rebutted by the record? Your Honor, I'm not arguing that they're affirmatively rebutted by the record. They certainly do conflict with the record at some points. For example, the affidavits say the defendant wasn't there, but the defendant admitted to being there. Daniel says that she was in the backyard at 7135 where it all happened, but we know it didn't happen at 7135. It happened at 7131. So there are some contradictions, some conflicts that the jury will have to reconcile. And as I put, they can't just believe, they can't be the standard. They just believe this to the extent of disbelieving everything else when there are conflicts. Defendant's last claim is that the proportionate penalties clause would extend Miller protections, should extend Miller protections to him. Because he's over 18, he has to explain why his brain is more akin to that of a juvenile, and he does not do that. The Garbarino report does not do that. Garbarino does not render an opinion that defendant was more akin to a juvenile. Read it. It speaks for itself. The report does not come to that conclusion. The report generally makes considerations that youth are risk factors, that adolescents generally are not playing with a full deck, and that once youth makes it difficult to conclude that they are fully and permanently formed in character. It does not say that defendant is more akin to a juvenile. What he does say about defendant is affirmatively rebutted by the record. It goes well beyond mere contradictions, well beyond credibility. This is something that is affirmatively rebutted by the record. Both cannot be true. Garbarino says defendant was under gang influence. Defendant denied being in a gang, not just in his PSI, but his mom spoke at sentencing and said that defendant was never in a gang. Garbarino described defendant as antisocial. Defendant called himself a people person, saying that he likes to spend time with his family, friends, and other positive people. Garbarino stated that defendant experienced emotional and physical abuse, but defendant denied any physical, sexual, or emotional abuse. And it's not just the PSI or defendant's statements, but what the record bears out. Garbarino states that defendant had no affirming relationships at home and came from a dysfunctional family. Defendant's mom was at nearly every court date. Defendant's mom and sister spoke at sentencing. His sister described that he's her other half, that she misses him and wants him back home. They went to school together at Southern Illinois University. Defendant said he was close with his mom and his sister, and even counsel at sentencing argued that defendant came from a close-knit, small, loving family that was very supportive. In an elocution, defendant tells his mom how much he loves her over and over and thanks his family for their support. This is not a dysfunctional family with no affirming relationships. Defendant graduated from 8th grade, graduated from Dunbar Vocational High School, and completed several semesters of college towards a criminal justice degree. He calls himself a fast learner and held jobs at McDonald's, UPS, and at Southern Illinois where he was a student. But Garbarino contends that defendant displayed a lot of disruptive social behavior as he was growing up. Garbarino contends defendant lived with people who had substance abuse problems and spent time in prison, but defendant denied that any family members had a history of substance abuse or were involved with the criminal justice system at all. The last major contradiction I want to point out, Garbarino says defendant was involved with heavy alcohol consumption, used and sold marijuana, and immersed himself in substance abuse as a form of self-medication. Defendant stated that the first and last time he tried alcohol was at 19, and he never did again. Defendant stated that he used marijuana when he was 18, that that was the only legal drug he ever used. He never abused it, nor did he use it on a regular basis. Garbarino's statements simply cannot be reconciled with the records. It's not a matter of credibility. It's facts wholly inconsistent with what the court knew below. There are, and that's exactly the reason why it should go back, because you have these inconsistent statements. They're not merely inconsistent. The court is not required to take as true statements that are affirmatively rebutted by the record, and what is more affirmatively rebutted by the record than he was a gang member. I'm not a gang member. He had a substance abuse problem. I did not have a substance abuse problem. His family, no relationships. Both sides of these facts come from the same source, the defendant, right? Some do not, but for example, it's not just a statement from the defendant that, I mean, we know that he went to school, that he graduated eighth grade, high school, that he attended several semesters of college. We know from the record that his mom and his sister were every court date. We have their statements, too. I believe they spoke in the PSI, but also at a sentencing hearing. It's more than just a statement or a PSI. It's the record, and the trial court was aware of all this. So does the doctor tell us why all of a sudden the left turned? If the defendant is such an outstanding citizen, all of a sudden, what's he doing with Big Mike? The, um, I'm sorry. The left turned to... The left turned to, like, if he's an outstanding citizen, and all of a sudden now he's hanging out with Big Mike and then they're proceeding to execute somebody. It's not a result of his troubled childhood, and that's what this court is considering, whether the defendant was more akin, whether the court erred in finding the defendant wasn't more akin to a juvenile. Where one, Gargrino's report does not say that he was, and every assertion he makes about defendant is affirmatively rebutted. Um, so because the record simply does not show that defendant was more akin to a juvenile, and 18 is where the court drew the line, he is not deserving of Miller protections, and the circuit court properly dismissed his proportionate penalties claim. Um, for these reasons, and those stated in our brief, if there are no other questions, I would ask you to refer to the lower court's rulings. Thank you. Thank you. Defense? Thank you, Your Honor. Um, I'd like to address Argument 1 later. I'll go in reverse order if the court accepts that. Um, starting with Argument 3 on the sentencing claim. Um, our counsel seems to be focusing on the absence of the phrase in Gargrino's report, more akin to a juvenile than adult. That's my phrase. Um, I think that's the only reasonable reading of Gargrino's findings, because in his report he says that Mr. Robinson's behavior at age 18 reflected immature impulsiveness due to his brain development. That's the equivalent of saying he was more akin to a juvenile than adult at age 18. Um, and he also says that his potential for rehabilitation was masked by his youth. Again, a finding that he was more akin to a juvenile than an adult at age 18. Um, the State's focusing on, um, Gargrino's assessment, but Gargrino didn't just pull these opinions out of thin air. He interviewed Mr. Robinson, and Mr. Robinson's statements in 2020 were different. His own assessment of his own childhood was different in 2020 than it was in 2010, naturally. And Dr. Gargrino assessed his statements in 2020 alongside his statements in 2010 and came to an expert conclusion that the 2020 statements were more reflective of the reality that Robinson grew up in. So, um, insofar as what the State's saying is that Dr. Gargrino's not credible, um, that's exactly the kind of thing that can only be resolved at a third stage hearing. Um, on argument two, um, the question on whether the actual innocence affidavits were sufficient at the second stage, the standard, it's very important to know the standard here. The question is whether if the jury heard Daniels and Dudley testify to what they say in their affidavits and the jury believed that testimony, meaning they believed that Daniels and Dudley saw Big Mike fire the gun and saw that Robinson was not there, could a jury that believed that testimony find Robinson guilty? That's the standard at the second stage, and the answer to that has to be no. Daniels and Dudley, uh, the State's talking about their credibility. Uh, again, only resolved at the third stage. Um, finally, going back to the first argument on why this court should remand for a new trial. Uh, the standard review is very noble because, um, contrary to the State's argument about the first prong of Strickland here, uh, the State says that there's not one case saying that the first prong is irrelevant in, um, Uh, the Illinois Supreme Court has said when a defendant raises a claim of ineffective assistance to appellate counsel, it should be granted if the claim would have been meritorious, because if it was meritorious, then clearly counsel's failure to raise this issue on direct appeal results in prejudice to the defendant, meaning counsel's failure was unreasonable. So in this context, and it is the usual context, ineffective appellate counsel, but it really is overlapping prongs here, and the only question before the court is on the trial record, which the court has and can assess, would this claim have had a reasonable probability of success had it been raised? And it doesn't matter what counsel did. Uh, she could have said, I didn't raise this claim because the sky was green that day, or she could have said, I considered three million issues and came up with these five, but not the one that would have won. If this court finds that it would have won, that's ineffectuous. And finally, just on the standard this court's applying, this claim is before this court for the first time. It's procedurally properly before this court on the other crimes evidence, whether or not it's first pronged claim error. And this court is considering that claim for the first time now, akin to it being on direct appeal. So this court is not putting itself in its own shoes back in 2013. It's deciding whether this claim now would merit relief under the SEBI standard. So this court should apply the SEBI standard. The SEBI makes it clear that the cases like this are closely balanced, and that's why this court should remain from your trial pursuant to argument one. If there are no further questions, thank you, Your Honor. Thank you. Thank you. All right. Very good. Thank you for your arguments. They were both very compelling, giving us much to think about. And we shall adjourn and issue a written decision in a reasonable length of time. Thank you. Thank you, Counsel. All right.